<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TRUSTEES OF THE B.A.C. LOCAL 4
PENSION FUND, et al.,

                Plaintiffs,

                v.

DEMZA MASONRY, LLC,

                Defendant.

Civil Action No. 18-17302 (MAS) (ZNQ)

**MEMORANDUM OPINION**

<u>**SHIPP, District Judge**</u>

      This matter comes before the Court upon Cross-Motions for Summary Judgment filed by Defendant Demza Masonry, LLC ("Demza") and Plaintiffs Trustees of the B.A.C. Local 4 Pension Fund, Trustees of the New Jersey B.A.C. Annuity Fund, Trustees of the B.A.C. Local 5 Pension Fund, Trustees of the New Jersey B.A.C. Health Fund, Trustees of the New Jersey BM&P Apprentice and Education Fund, Trustees of the Bricklayers and Trowel Trades International Pension Fund, and Trustees of the International Masonry Institute (collectively, the "Funds"). (ECF Nos. 27, 28.) The parties opposed each other's motions (ECF Nos. 39, 43) and the Funds replied (ECF No. 44.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Demza's Cross-Motion for Summary Judgment is denied, and the Funds' Cross-Motion for Summary Judgment is granted.

I.   **BACKGROUND**

A.   **Speranza Brickwork, Inc.**

In this action, the Funds seek to hold Demza liable for Speranza Brickwork, Inc.'s ("Speranza Inc.") delinquent contributions under theories of successor liability and alter ego liability. The Funds are trustees of multi-employer, labor-management trust funds. (Pls.' Statement of Undisputed Material Facts ("PSUMF") ¶ 1, ECF No. 31.)[1] Speranza Inc., a defunct masonry company, failed to remit contributions owed to the Funds under a collective bargaining agreement. (*Id.* ¶¶ 6, 15–16, 23.) In December 2014, the Funds obtained two judgments against Speranza Inc. for delinquent contributions. (*Id.* ¶¶ 15–17.) Speranza Inc. filed for bankruptcy in May 2015. (*Id.* ¶ 18.) The Funds then filed, and the bankruptcy trustee accepted, a proof of claim against Speranza Inc. for $382,978.05, representing the judgments and additional delinquent contributions owed to the Funds at the time. (*Id.* ¶¶ 19–20.) The Funds, however, recovered only $4,187.90 from Speranza Inc.'s bankruptcy. (*Id.* ¶ 22.)

Joseph Speranza ("Mr. Speranza") owned and operated Speranza Inc. from a facility in Whitehouse Station, New Jersey (the "Facility") for over twenty years. (*Id.* ¶¶ 26–34.) While in business, Speranza Inc. performed work for the following general contractors: De Sapio Construction Inc. ("De Sapio"); Gilbane Building Co. ("Gilbane"); M&M Construction Company, Inc. ("M&M"); Sordoni Construction Co. ("Sordoni"); and Terminal Construction Corp./DiNallo Construction Corp. ("Terminal/DiNallo"). (*Id.* ¶ 36.) Speranza Inc. employed the following individuals: Estimator Nat Acchione ("Estimator Acchione"); Victor Bartel ("Bartel"); David Borzelleca ("Borzelleca"); John Kisal ("Kisal"); Richard Piez ("Piez"); Jose Rodriguez

---

[1] Demza does not dispute any facts contained in the Statement of Undisputed Material Facts submitted by the Funds. (*See generally* Def.'s Resp. to PSUMF ("DRPSUMF"), ECF No. 41.)

("Rodriguez"); Supervisor Anthony Triola ("Supervisor A. Triola"); Thomas Triola, Jr. ("Triola, Jr."); and Thomas Triola, Sr. ("Triola, Sr."). (*Id.* ¶¶ 43–44.)

Mr. Speranza operated Speranza Inc. concurrently with Building Barriers, Inc. ("Building Barriers"), a waterproofing and masonry company that he co-owned. (*Id.* ¶¶ 48–49, 51–53.) Building Barriers and Speranza Inc. both operated from the Facility, "shared employees" and equipment, and used the same insurance company and broker. (*Id.* ¶¶ 50, 54–56, 58–59, 155.) Once Speranza Inc. began having financial difficulty, Mr. Speranza used Building Barriers to complete some of Speranza Inc.'s masonry projects. (*Id.* ¶¶ 57, 61.) Building Barriers performed masonry work "for another year or so" after Speranza Inc. filed for bankruptcy and then ceased operations due to its own financial difficulties. (*Id.* ¶¶ 60–61.)

In December 2015, Mr. Speranza and Tim O'Brien ("O'Brien") "discuss[ed] opening a new masonry company[,]" which Mr. Speranza ultimately agreed to work for "so long as he was not responsible for financing the company." (*Id.* ¶¶ 66, 69.) In January 2016, Mr. Speranza and O'Brien met with Willie Dempsey ("Dempsey"), who agreed to invest in the new company. (*Id.* ¶¶ 73–74.) That same month, O'Brien and Dempsey executed a partnership agreement and created Dempsey O'Brien Speranza Masonry Construction LLC ("Dempsey O'Brien Speranza Masonry"), which operated for about six months. (*Id.* ¶ 74; *see id.* ¶¶ 90–91, 95.) During that time, Mr. Speranza served as the company's "primary estimator." (*Id.* ¶ 80.) The company used "the name 'Speranza' for marketing purposes, as [Mr.] Speranza's name 'carried weight in the masonry industry[.]'" (*Id.* ¶ 78.) The company operated from the Facility and employed some of the same individuals who worked for Building Barriers and Speranza Inc. (*Id.* ¶¶ 71, 84–85.)

Mr. Speranza secured Dempsey O'Brien Speranza Masonry's only project by contacting Speranza Inc.'s former customer, Sordoni. (*Id.* ¶ 81.) The project commenced in April 2016 and

involved masonry work at a PetSmart (the "PetSmart Project"). (*Id.* ¶ 83.) Soon after, Mr. Speranza learned that O'Brien was misappropriating funds from the company for his own personal use. (*Id.* ¶ 87.) In or about July 2016, Mr. Speranza and Dempsey parted ways with O'Brien and decided to start a new masonry company, Demza. (*Id.* ¶¶ 90–91.)

**B.    Demza Masonry, LLC**

In July 2016, Dempsey formed Demza, a masonry company where Mr. Speranza acts as Vice President and has no ownership interest. (*Id.* ¶¶ 96, 102–03, 106–08.) Dempsey is a passive investor while Mr. Speranza primarily runs the business. (*Id.* ¶¶ 90–91, 108–110, 139.) The name Demza is a combination of Dempsey and Speranza's names: the "D-E-M" refers to Dempsey and the "Z-A" refers to Speranza. (*Id.* ¶ 97.) "Having [Mr.] Speranza's name incorporated in the title of the business helps Demza obtain jobs with general contractors on account of [Mr.] Speranza's reputation in the masonry industry." (*Id.* ¶ 98.)

Demza operates from the Facility and uses the same insurance company and broker as did Speranza Inc. (*Id.* ¶¶ 26, 37, 99, 114.) Demza employs Supervisor A. Triola, Estimator Acchione, Bartel, Borzelleca, Kisal, Piez, Rodriguez. Triola Jr., and Triola Sr., all of whom worked for Speranza Inc. (*Id.* ¶¶ 43–44, 137–38, 144.) Those employees accounted for 53% of the hours worked by Demza employees in 2017. (*Id.* ¶ 148.) Demza has performed work for De Sapio, Gilbane, M&M, and Terminal/DiNallo, all of whom were customers of Speranza Inc. (*Id.* ¶¶ 36, 104.) Demza also completed the PetSmart Project for Sordoni. (*Id.* ¶¶ 93–94.) For masonry projects, Demza uses some of Speranza Inc.'s smaller equipment that was not sold during bankruptcy, such as mixers, tarps, and portable lockers for hand tools. (*Id.* ¶¶ 155, 157.)

C.    **National Labor Relations Board Decision**

The record contains a letter decision issued by a Regional Director of the National Labor Relations Board ("NLRB") on September 27, 2018. (Sept. 2018 Letter Decision, Ex. A to Def.'s Moving Br., ECF No. 27-2.) The letter indicates that the labor union that had the collective bargaining agreement with Speranza Inc. filed an unfair practice charge with the NLRB against Demza. (*Id.* at 1.) The union alleged that Demza was an alter ego of Speranza Inc. and that Demza violated the National Labor Relations Act ("NLRA") by "fail[ing] and refus[ing] to provide [the union] with necessary and relevant information." (*Id.*) The Funds were not a party to this matter.

In dismissing the union's charge, the Regional Director found the "evidence adduced by [its] investigation" did not support the union's contention that Demza was an alter ego of Speranza Inc. (*Id.*) According to the director, although Demza and Speranza Inc. "engaged in masonry subcontracting and . . . Demza is operating out of Speranza's former location, . . . that is the extent of the 'substantially identical' multi factor elements shared by the two entities." (*Id.*) The director explained that its investigation revealed: (1) Mr. Speranza has no ownership interest in Demza; (2) no evidence that Mr. Speranza has any control over Demza; (3) no evidence that Demza purchased any of Speranza Inc.'s equipment; (4) "out of 11 Speranza [Inc.] superintendents/foreman, only 3 are employed by Demza"; (5) "out of approximately 13 Speranza[] [Inc.] customers, Demza has done business with only one"; and (6) "there is no evidence that Demza was created to evade its responsibilities under the Act." (*Id.* at 2.) The director, therefore, concluded that Demza did not violate the NLRA. (*Id.*) The union appealed. (*See* Nov. 2018 Decision Letter, Ex. B. to Def.'s Moving Br., ECF No. 27-3.) By letter dated November 20, 2018, the General Counsel of the NLRB affirmed the September 2018 decision letter for the reasons set forth therein. (*Id.*)

**D.    Procedural History**

On December 17, 2018, the Funds filed the present one-count Complaint, seeking to hold Demza liable for Speranza Inc.'s delinquent contributions pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Compl. ¶¶ 1, 41–53, ECF No. 1.)  The Complaint asserts that under the doctrines of successor liability and alter ego liability, Demza is liable for Speranza Inc.'s ERISA liabilities. (*Id.*) Discovery ended in this matter on January 20, 2020. (*See* ECF No. 21.) On March 30, 2020, the parties filed the instant Cross-Motions for Summary Judgment. (ECF No. 27, 28.) Because Demza improperly filed opposition on April 3, 2020, this matter was administratively terminated pending submissions in accordance with Local Civil Rule 56.1. (ECF No. 40.) On May 21, 2020, the parties properly filed opposition. (ECF Nos. 41, 42, 43.) The Funds filed a timely reply on May 28, 2020. (ECF No. 44.) On June 8, 2020, the Court reinstated the parties' Cross-Motions for Summary Judgment (ECF No. 47.)

**II.    LEGAL STANDARD**

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact—a fact "that might affect the outcome of the suit under the governing law[,]" *Anderson*, 477 U.S. at 248—raises a "genuine" dispute if "a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250). "[D]isputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

To determine whether a genuine dispute of material fact exists, the Court must consider all facts and reasonable inferences in the light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Thereafter, the nonmoving party creates a "genuine [dispute] of material fact if . . . sufficient evidence [is provided] to allow a jury to find [for him] at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). "When ruling on cross-motions for summary judgment, the court must consider the motions independently, . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468–69 (citations omitted). "That one of the cross-motions is denied does not imply that the other must be granted." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015).

## III.    DISCUSSION

### A.    Demza's Cross-Motion for Summary Judgment

In its Cross-Motion, Demza argues that it is entitled to summary judgment because the Funds failed to demonstrate that: (1) Demza is an alter ego of Speranza Inc.; and (2) Demza and Speranza Inc. constitute a single employer. (Def.'s Moving Br. 1–6, ECF No. 27-12.) Demza, however, wholly fails to address the successorship doctrine (*see generally id.*), the only other theory of liability—aside from alter ego—raised in the Funds' one-count Complaint (Compl. ¶¶ 1,

7

41–53). Demza also does not dispute a single fact in the Statement of Material Facts submitted by the Funds in support of their Cross-Motion for Summary Judgment, including facts contained under the header "Demza is a successor of Speranza [Inc.]" (DRPSUMF ¶¶ 24–47.) Based on these facts alone, Demza cannot persuasively claim it has demonstrated as a matter of law that it is not liable for Speranza Inc.'s delinquent contributions. The Court, accordingly, denies Demza's Cross-Motion for Summary Judgment.

### B.    The Funds' Cross-Motion for Summary Judgment

The Funds argue that Demza is a successor of Speranza Inc., and thus liable for its delinquent contributions, because there is substantial continuity between the two entities and Demza had notice of Speranza Inc.'s ERISA liabilities. (Pls.' Moving Br. 15–21, ECF No. 32.)

Although ERISA does not discuss whether the liabilities it creates may be passed on to successor entities, federal courts have extended ERISA liability to successor entities under a federal common law successorship doctrine. *Einhorn v. M.L. Ruberton Constr. Co.*, 632 F.3d 89, 96 (3d Cir. 2011) (citing *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323 (7th Cir. 1990)). That doctrine is designed to "impos[e] liability upon successors beyond the confines of the common law rule when necessary to protect important employment-related policies." *Id.* at 94. To impose successor liability, a plaintiff must show: (1) the successor had notice of the predecessor's debts; and (2) there is substantial continuity between the entities. *Id.* at 99. "The inquiry should be effectuated on a case by case basis balancing the equities presently before the court." *Id.*

### 1.    Demza had Notice of Speranza Inc.'s Delinquent Contributions

"Notice can be proven by showing actual knowledge, as well as evidence that allows the fact finder to imply knowledge from the circumstances." *Sullivan v. Running Waters Irrigation,*

*Inc.*, 739 F.3d 354, 357 (7th Cir. 2014) (citation omitted). "Notice can be implied from [a] variety of circumstances, such as common control or proximity." *Id.* (citation omitted). Here, there is no dispute that Mr. Speranza acts as Demza's Vice President and runs all aspects of the company. (PSUMF ¶¶ 102–03, 108–10.) Nor is there any dispute that Mr. Speranza owned Speranza Inc. and knew of the delinquent contributions that Speranza Inc. owed the Funds. (*Id.* ¶¶ 15–23, 34.) The Court, therefore, finds that Demza had notice of Speranza Inc.'s delinquent contributions. *See Cent. Laborers' Pension Fund v. AEH Constr., Inc.*, No. 14-3052, 2015 WL 6636032, at *6 (C.D. Ill. Oct. 30, 2015) (imputing president's knowledge of a predecessor entity's ERISA liabilities to successor entity as a matter of law (citing *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 748 (7th Cir. 1994))).

### 2.   There Is Substantial Continuity Between Demza and Speranza Inc.

"Under the substantial continuity test courts look to, *inter alia*, the following factors: continuity of the workforce, management, equipment and location; completion of work orders begun by the predecessor; and constancy of customers." *Einhorn*, 632 F.3d at 99 (citations omitted). Here, there is no dispute that Demza performs masonry work in New Jersey, as did Speranza Inc. (PSUMF ¶¶ 3, 6.) Demza also operates from the same Facility and employs ten former Speranza Inc. employees—including Estimator Acchione, Supervisor A. Triola, and Mr. Speranza—who accounted for 53% of the hours worked by Demza employees in 2017. (*Id.* ¶¶ 3, 6, 43–44, 137–38, 144, 148.) As noted, Mr. Speranza acts as Demza's Vice President and runs the company. (*Id.* ¶¶ 101–03, 108–10.) There is no dispute that having "Speranza's name incorporated in the title of the business helps Demza obtain jobs with general contractors on account of [Mr.] Speranza's reputation in the masonry industry." (*Id.* ¶ 98.) Demza has performed masonry work for five former Speranza Inc. customers—De Sapio, Gilbane, M&M, Terminal/DiNallo, and Sordoni—and completed the PetSmart Project for Sordoni. (*Id.* ¶¶ 36, 93–94, 104.) The record

also indicates that Demza uses some of Speranza Inc.'s smaller equipment for its masonry projects. (*Id.* ¶¶ 3, 6, 155–57.)

Based on these facts, the Court finds that the Funds have met their initial burden of demonstrating the absence of a genuinely disputed material fact as to whether substantial continuity exists between Demza and Speranza Inc.

Demza attempts to create genuine issues of material fact by (1) pointing to the NLRB decision letters and (2) arguing that *Einhorn* is distinguishable from this case. (Def.'s Opp'n Br. 1–5, ECF No. 39.) The Court is not persuaded.

As to the NLRB decision letters, the Funds did not participate in that matter and, as Demza acknowledges, the NLRB's decision is not binding on this Court. (Def.'s Moving Br. 1.) More importantly, the NLRB did not address the successorship doctrine but rather only considered whether Demza and Speranza Inc. are alter egos. (Sept. 2018 & Nov. 2018 Decision Letters.) Although there are some similarities between the two doctrines, they are not the same. In determining whether two entities are alter egos, courts consider whether those entities share "'substantially identical' management, business purpose, operation, equipment, customers, and supervision, as well as ownership. In addition, . . . an intent to evade the [NLRA] is an important, but not an essential, factor." *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 151 (3d Cir. 1994).

In concluding that alter ego liability did not exist, the NLRB noted it found no evidence that Demza intended to evade the NLRA and placed great weight on the lack of common ownership. (Sept. 2018 Decision Letter 1–2 ("the Board has made clear that it will only find alter-ego status absent common ownership in narrowly defined circumstances").) To find successor liability, however, neither an ownership interest nor an intent to evade the statute is required. *See Einhorn*, 632 F.3d at 99 (expressly excluding "commonality of ownership" from the substantial

continuity test). Thus, that the NLRB found no alter ego liability does not lead to the conclusion that no successor liability exists. While the NLRB did make findings on some factors relevant to the successorship doctrine, those findings are contradicted by the undisputed facts developed in this record. For example, the NLRB stated it found no evidence that Mr. Speranza "has any control over Demza" and that Demza performed masonry work for only one of Speranza Inc.'s former customers. (Sept. 2018 Decision Letter 2.) The undisputed evidence before this Court, however, demonstrates that Mr. Speranza runs all aspects of Demza and that Demza has performed work for five former Speranza Inc. customers. (PSUMF ¶¶ 36, 104, 108–10.) Notably, Demza merely submitted the decision letters alone. This Court will not speculate as what evidence may have been before the NLRB. The Court, therefore, finds the NLRB decision letters unpersuasive.

Turning to *Einhorn*, Demza argues that *Einhorn* is inapplicable because that case involved an asset sale transaction of an ongoing business, thereby suggesting that the successorship doctrine is also inapplicable. (Def.'s Opp'n Br. 1–2). While *Einhorn* involved an asset sale transaction, the Court cannot agree that the successorship doctrine is limited to those circumstances. Such a conclusion would be at odds with both ERISA's well-established goal of "protect[ing] plan participants and their beneficiaries[,]" and the successorship doctrine's purpose of "imposing liability upon successors beyond the confines of the common law rule when necessary to protect important employment-related policies." *Einhorn*, 632 F.3d at 94, 96 (internal quotation marks and citation omitted). Other courts have rejected similar arguments. *See Plumbers' Pension Fund, Local 130 v. Republic Piping Sys., Inc.*, No. 20-774, 2020 WL 4437846, at *3 (N.D. Ill. Aug. 3, 2020) ("*Sullivan* teaches that, depending on the facts, a defendant may be held liable under ERISA for a predecessor's multi-employer fund contributions even if the defendant did not buy the predecessor's assets."). The Court, therefore, rejects Demza's argument on this issue.

Given the undisputed facts of this case, the Court finds that the Funds have demonstrated Demza is a successor of Speranza Inc. and therefore liable for Speranza Inc.'s delinquent contributions. The Court, accordingly, grants the Funds' Cross-Motion for Summary Judgment.

IV.    **CONCLUSION**

For the reasons set forth above, Demza's Cross-Motion for Summary Judgment is denied, and the Funds' Cross-Motion for Summary Judgment is granted. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE